**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| SIGRAM SCHINDLER BETEILIGUNGSGESELLSCHAFT MBH, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Civil Action No. 1:09cv935 |
| DAVID J. KAPPOS, In his official capacity as Under Secretary for Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, *et al.*, | ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
& IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:        (703) 299-3983
Email:  dennis.barghaan@usdoj.gov

DATE: October 21, 2009          ATTORNEYS FOR DEFENDANTS

OF COUNSEL:    Benjamin Wood
               Nathan Kelley
               Associate Solicitors
               United States Patent & Trademark Office

## TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY AND REGULATORY BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    THE STATUTORY SCHEME. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    PATENT EXAMINATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    REEXAMINATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            1.    "*Ex Parte*" Reexamination. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            2.    "*Inter Partes*" Reexamination. . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.    ADMINISTRATIVE APPEALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.    JUDICIAL REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   THE "CHALLENGED REGULATION". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

UNDISPUTED MATERIAL FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE. . . . . . . . . . . . . . . . . . . . . . . . . . 11

      A.    GENERAL PRINCIPLES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

      B.    WITHHOLDING JUDICIAL REVIEW AT THIS TIME WOULD NOT CAUSE "IMMEDIATE
            AND SUBSTANTIAL IMPACT" TO SSBG. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.   THE CHALLENGED REGULATION IS NOT "CONTRARY TO LAW". . . . . . . . . . . . . . . 18

      A.    SECTION 1.303 IS AN ACCURATE EXPLANATION OF THE AVAILABILITY OF JUDICIAL
            REVIEW FOR PATENT OWNERS SEEKING REVIEW OF AN *EX PARTE* REEXAMINATION
            DECISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            1.    SSBG's Statutory Construction Would Require this Court to Render Each
                  of the 1999 Amendments to the Patent Act's Judicial Review Provisions
                  "Mere Surplusage". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

a.    § 141 Expressly Limits Judicial Review in "Any" Reexamination Context to the Federal Circuit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

b.    § 145 Expressly Restricts District Court Judicial Review to Those Instances in Which the BPAI Rendered Its Decision Pursuant to § 134(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

2.    The Continued Existence of § 306 Does Not Mandate an Alternative Result. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

a.    The Terms of § 306 Are Not Facially Inconsistent with the Newly-Amended Terms of §§ 141 and 145. . . . . . . . . . . . . . . . . . . . . . . 23

b.    Any Conflict Between §§ 141/145, and § 306, Must Be Resolved in Favor of §§ 141/145. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.    THE USPTO HAS AUTHORITY TO PROMULGATE INFORMATIONAL, NON-BINDING REGULATIONS REGARDING THE AVAILABILITY OF JUDICIAL REVIEW. . . . . . . . . . 26

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

### U.S. CONSTITUTION

U.S. CONST. art. III.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 27, 29

### CASES

Abbott Labs. v. Gardner, 387 U.S. 136 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-15

Barseback Kraft AB v. United States, 121 F.3d 1475 (Fed. Cir. 1997).. . . . . . . . . . . . . . . . . . 20

Bush v. Lucas, 462 U.S. 367 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Calderon v. Ashmus, 523 U.S. 740 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Caraco Pharm. Labs., Inc. v. Forest Labs., Inc., 527 F.3d 1278 (Fed. Cir. 2008) .. . . . . . . . . . 14

Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . 13, 15

Coalition for Common Sense v. Secretary, 464 F.3d 1306 (Fed. Cir. 2006) . . . . . . . . . . . . . . 14

Cooper Techs. Co. v. Dudas, 536 F.3d 1330 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . 26

Ctr. for Nuclear Resp. v. NRC, 781 F.2d 935, 944 (D.C. Cir. 1986). . . . . . . . . . . . . . . . . . . . 17

Dougherty v. Town of N. Hempstead, 282 F.3d 83 (2d Cir. 2008).. . . . . . . . . . . . . . . . . . . . . 11

Duncan v. Walker, 533 U.S. 167 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120 (2000) . . . . . . . . . . . . . . . . . . . . . 23

Ford v. NYLCare Health Plans, 141 F.3d 243 (5th Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . 27

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167 (2000) . . . . . . . . . . . . . 12

Gardner v. Toilet Goods Ass'n, 387 U.S. 167 (1967).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Gordon v. Shalala, 55 F.3d 101 (2d Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Harding v. Dep't of Veterans Affairs, 448 F.3d 1373 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . 25

Hermann v. Cencom Cable Assocs., 978 F.2d 978 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . 24

Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318 (Fed. Cir. 1998) . . . . . . . . . . . . 2

Hyatt v. Doll, 576 F.3d 1246 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 8

In re Schiano, 327 Fed. Appx. 202 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Klein v. Commissioner, 474 F.2d 821 (4th Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Last Best Beef, LLC v. Dudas, 506 F.3d 333 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 25

Lee Pharms. v. Kreps, 577 F.2d 610 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Legal Defense Fund v. Quigg, 932 F.2d 920 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . 12

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Mazzari v. Rogan, 323 F.3d 1000 (Fed. Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Merck & Co. v. Kessler, 80 F.3d 1543 (Fed. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Metro. Stevedore Co. v. Rambo, 515 U.S. 291 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Midwest Indus., Inc. v. Karavan Travelers, Inc., 175 F.3d 1356 (Fed. Cir. 1999) (en banc). . . . . 2

In re Microstrategy, Inc. Secs. Litig., 115 F. Supp. 2d 620 (E.D. Va. 2000) . . . . . . . . . . . . . . . 19

Nat'l Org. of Vets. Advocates, Inc. v. Secretary, 260 F.3d 1365 (Fed. Cir. 2001) . . . . . . . . . . . 27

NTEU v. United States, 101 F.3d 1423 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Olajide v. BICE, 402 F. Supp. 2d 688 (E.D. Va. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Posades v. Nat'l City Bank, 296 U.S. 497 (1936). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . 13

Reyes-Gaona v. North Carolina Growers Ass'n, 250 F.3d 861 (4th Cir. 2001) . . . . . . . . . . . . . 22

Ross v. Bank of Am., 524 F.3d 217 (2d Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sharp v. United States, 580 F.3d 1234 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Syntex (USA), Inc. v. USPTO, 882 F.2d 1570 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 3

U.S. Ass'n of Importers of Tex. & App. v. DOL, 413 F.3d 1344 (Fed. Cir. 2005).. . . . . . . . . . . 16

United Trans. Union v. Foster, 205 F.3d 851 (5th Cir. 2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Warth v. Seldin, 422 U.S. 490 (1975); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Whitmore v. Arkansas, 495 U.S. 149 (1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Williams v. Taylor, 529 U.S. 362 (2000).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATUTES

28 U.S.C. § 1631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

35 U.S.C. § 2(b)(2)(A).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29

35 U.S.C. § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

35 U.S.C. §§ 111(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

35 U.S.C. § 115. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

35 U.S.C. § 131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

35 U.S.C. § 134. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 20

35 U.S.C. § 134 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 134 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 134(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 21, 22

35 U.S.C. § 134(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

35 U.S.C. § 141. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 17, 19-21, 23, 24, 28, 29

35 U.S.C. § 141 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

35 U.S.C. § 141 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

35 U.S.C. § 141 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

35 U.S.C. § 145 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

35 U.S.C. § 145 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

35 U.S.C. § 145. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 12, 16-19, 21-24, 26, 28, 29

35 U.S.C. § 146. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

35 U.S.C. § 302. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

35 U.S.C. § 303(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

35 U.S.C. § 304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 10

35 U.S.C. § 305. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

35 U.S.C. § 306. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21-25

35 U.S.C. § 314. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

35 U.S.C. § 314(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

35 U.S.C. § 314(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## REGULATIONS

5 C.F.R. § 120.127. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

5 C.F.R. § 1201.133. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

7 C.F.R. § 400.98(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

13 C.F.R. § 142.37. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

37 C.F.R. § 1.302. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

37 C.F.R. § 1.303. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18, 22-24, 26, 27, 29

37 C.F.R. § 1.303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

37 C.F.R. § 1.304. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

37 C.F.R. § 1.304(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

37 C.F.R. § 1.304(a)(3)(i). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

### MISCELLANEOUS

17 Fed. Reg. 10864, 10868 (Jan. 13, 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13 Fed. Reg. 9575, 9595 (Dec. 31, 1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

13A Charles Alan Wright, *et al.*, FED. PRACTICE & PROCEDURE § 3532 (1984). . . . . . . . . . . . 13

H.R. CONF. RPT. 106-464 (Nov. 9, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 21, 26

H.R. RPT. 96-1307, at 3 (Sept. 9, 1980), reprinted in 1980 U.S.C.C.A.N. 6460, 6462. . . . . . . . . 3

LOC. CIV. R. 56(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Patent Interference Proceedings, 49 Fed. Reg. 48416, 48455 (Dec. 12, 1984). . . . . . . . . . . . . 8

Revision of Patent Procedure, 47 Fed. Reg. 47744, 47756 (Oct. 27, 1982). . . . . . . . . . . . . . . 8

Rules to Implement Optional Inter Partes Reexamination Proceedings,
    65 Fed. Reg. 76756, 76761 (Dec. 7, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

## INTRODUCTION

In this action, plaintiff Sigram Schindler Beteiligungsgesellschaft mBH ("SSBG"), seeks review under the provisions of the Administrative Procedure Act ("APA") of a United States Patent and Trademark Office ("USPTO") regulation that does not itself have any legal effect, but simply seeks to explain to administrative litigants what avenues of judicial review are available after receiving an adverse appellate decision from the Board of Patent Appeals and Interferences ("BPAI"). SSBG – who is a patent owner currently embroiled in *ex parte* reexamination proceedings before the USPTO – fears that at some later date, *if* the BPAI issues a decision adverse to its interests, it *might* be forced to face the question of what options it has available to seek judicial review in the Article III courts. At the threshold, the hypothetical nature of SSBG's ostensible judicial review quandary renders it without standing, and its instant action unripe, under Article III of the Constitution.

SSBG fares no better on the merits. Upon a faithful application of the canons of statutory construction, the regulation SSBG challenges – 37 C.F.R. § 1.303 – is fully consistent with the judicial review provisions of the Patent Act; indeed, SSBG's position here would require this Court to eliminate or outright ignore the unequivocal statutory language Congress specifically placed into the Patent Act. And finally, the USPTO has the authority to promulgate a regulation that serves an explanatory purpose – one that attempts to ensure that those who practice before the agency understand the full scheme for administrative and judicial review of patentability decisions.

For the reasons that follow, this Court should enter summary judgment in favor of the defendants (collectively "USPTO").

## STATUTORY AND REGULATORY BACKGROUND

The instant action (and the USPTO regulations that are at its heart) revolve around the unique system Congress established for the initial examination of patent applications, and the subsequent reexamination of issued patents – one that involves both administrative proceedings before the USPTO, and judicial review by the Article III courts.[1]  Before proceeding to an analysis of plaintiff's instant APA challenge, it is therefore important to provide a detailed discussion of this scheme – with respect to both its administrative and judicial components.

## I.    THE STATUTORY SCHEME

### A.    PATENT EXAMINATION

At the outset, an individual who seeks a patent on a particular invention must file an application with the USPTO that contains a specification and an oath by the applicant to the effect that he or she believe that they are the original inventor of the invention at issue.  See 35 U.S.C. §§ 111(a); 115.  A USPTO patent examiner thereafter reviews the application and makes a determination as to whether the application claims presents claims that are patentable.  See id. § 131.  If "it appears that the applicant is entitled to a patent under the law," the USPTO "shall issue a patent."  Id.

---

[1]These statutory provisions represent, as the Federal Circuit has indicated, Congress' attempt to provide an "elaborate remedial system" governing the examination of patent applications and the review of those examination decisions in the federal courts.  See Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1327-28 (Fed. Cir. 1998) (quoting Bush v. Lucas, 462 U.S. 367, 388 (1983)), overruled on other grounds, Midwest Indus., Inc. v. Karavan Travelers, Inc., 175 F.3d 1356 (Fed. Cir. 1999) (en banc).

B.    R<small>EEXAMINATION</small>

1.    **"*Ex Parte*" Reexamination**

Until approximately 1980, individuals or entities seeking to challenge the validity of an

issued patent were without any real administrative recourse.  In that year, however, Congress

created an administrative alternative now known as "*ex parte* reexamination," which authorized

third parties to request that the USPTO reexamine "the substantive patentability" of patent claims

that the agency has already issued "on the basis of any prior art cited under the provisions of

section 301."  35 U.S.C. § 302; see also H.R. R<small>PT</small>. 96-1307, at 3 (Sept. 9, 1980), reprinted in

1980 U.S.C.C.A.N. 6460, 6462.  SSBG currently finds itself within this type of administrative

reexamination proceeding.

The use of the modifier "*ex parte*" to describe this form of reexamination is significant,

and reflects the nature of administrative reexamination proceedings.  In short, if the USPTO

accepts a third-party's request (*i.e.*, concludes that there is a "substantial new question of

patentability," 35 U.S.C. § 303(a)), and orders reexamination, the resulting proceedings generally

continue (as with initial patent examination) only between the USPTO and the patent owner.  See

Syntex (USA), Inc. v. USPTO, 882 F.2d 1570, 1573 (Fed. Cir. 1989) ("[A] reexamination is

conducted *ex parte* after it is instituted.").  Other than "the right to reply to any statement

submitted by the patent owner . . . [t]he statute gives third party requesters no further, specific

right to participate in the reexamination proceeding."  Id.; see also 35 U.S.C. §§ 304-05.  If the

examiner responsible for conducting the reexamination discovers (much like initial examination)

that the claims were not actually patentable, he or she issues a final office action rejecting those

claims.  See 35 U.S.C. § 305 (providing that *ex parte* reexamination is conducted under the

3

"procedures established for initial examination").

### 2. "*Inter Partes*" Reexamination

Almost twenty years later, Congress elected to modify the system once again. In this respect, Congress recognized that individuals and entities were not utilizing the aforementioned reexamination procedure because "a third party who requests reexamination cannot participate at all after initiating the proceedings." H.R. CONF. RPT. 106-464, at 133 (Nov. 9, 1999). In 1999, Congress therefore created a new "*inter partes*" reexamination procedure that authorized the third-party requester to participate in the administrative reexamination proceedings. See 35 U.S.C. § 314. More specifically, in "*inter partes*" reexamination, "[e]ach time that the patent owner files a response to an action on the merits . . . the third-party requester shall have one opportunity to file written comments addressing issues raised by the action . . . or the patent owner's response." Id. § 314(b)(2). And just like *ex parte* reexamination, if the examiner responsible for reexamining the patent concludes that the relevant claims are patentable, he or she will issue an office action rejecting the same. See id. § 314(a).

### C. ADMINISTRATIVE APPEALS

In the event that a USPTO examiner rejects patent claims during either initial examination or reexamination, the patent applicant or owner has the right to further administrative review within the USPTO itself. More specifically, a patent applicant or owner who remains disappointed by a decision issued by a patent examiner may seek review with the Board of Patent Appeals and Interferences ("BPAI")[2] – an appellate tribunal within the USPTO.

---

[2]Certain court decisions utilize the short form "Board" to refer to the USPTO's appellate tribunal. See Hyatt v. Doll, 576 F.3d 1246, 1248 (Fed. Cir. 2009). The instant memorandum will use plaintiff's chosen nomenclature ("BPAI"), merely in the interest of consistency.

4

See 35 U.S.C. § 6 (providing that the BPAI "review[s] adverse decisions of examiners").

The primary statutory provision governing the right of appeal to the BPAI has been codified at 35 U.S.C. § 134. Of import for the purposes of the instant action, § 134 has undergone significant changes as Congress has modified the statutory scheme of administrative and judicial review. In this respect, before Congress completed this scheme – at least as a general matter – in 1999, § 134 was rather simple. See 35 U.S.C. § 134 (1997) ("An applicant for a patent . . . may appeal from the decision of the primary examiner to the [BPAI].").

But Congress overhauled § 134 in 1999 – in ways extremely pertinent to the statutory construction exercise contemplated by this action. In the newly-amended provision, Congress delineated each instance in which a particular entity was entitled to appeal an adverse action to the BPAI, and placed each such instance into a *separate subsection*. After the 1999 amendments, § 134 provides (and continues to provide today) as follows, in pertinent part:

> (a) PATENT APPLICANT – An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the [BPAI] . . . .
>
> (b) PATENT OWNER – A patent owner in any reexamination proceeding may appeal from the final rejection of any claim by the primary examiner to the [BPAI] . . . .
>
> (c) THIRD-PARTY – A third-party requester in an inter partes proceeding may appeal to the [BPAI] from the final decision of the primary examiner favorable to the patentability of any original or proposed amended or new claim of a patent . . . .

35 U.S.C. § 134 (2000).

As a result, SSBG brought its current appeal to the BPAI pursuant to § **134(b)**.

### D.    JUDICIAL REVIEW

Congress also provided for the possibility of judicial review of USPTO patentability decisions (both from initial examination and reexamination) in the Article III courts. Indeed, the

Patent Act contains an entire chapter devoted to this subject – entitled "Review of Patent and

Trademark Office Decisions," and encompassing several statutory provisions.  See 35 U.S.C. §§

141-46.

From a general perspective, the Patent Act provides for two different types of judicial

review of BPAI decisions – the availability of which differs depending on the particular

proceeding that led the entity to the BPAI.  Initially, the Patent Act provides for judicial review

of a BPAI decision in the United States Court of Appeals for the Federal Circuit.  See 35 U.S.C.

§ 141.  But the Patent Act also authorizes, in certain circumstances, review of a BPAI decision in

the United States District Court for the District of Columbia ("District Court").  See id. § 145.

As plaintiff's memorandum suggests, the primary difference between the two forms of judicial

review is that district court review under § 145 allows an entity, under certain circumstances, an

"opportunity to present additional evidence" that was not presented to the USPTO during

administrative proceedings.  See Mazzari v. Rogan, 323 F.3d 1000, 1004 (Fed. Cir. 2003); see

also Hyatt, 576 F.3d at 1248 (providing those circumstances in which a litigant may present

evidence outside the administrative record to the district court pursuant to § 145).

Before the aforementioned amendments to § 134, the Patent Act generally authorized

judicial review from BPAI decisions in either the Federal Circuit or District Court.  As such, §

141 baldly provided that "[a]n applicant dissatisfied with the decision in an appeal to the BPAI

under § 134 of this title may appeal the decision to the Federal Circuit."  35 U.S.C. § 141 (1997).

The language of § 145 was of a similar ilk:  "An applicant dissatisfied with the decision of the

BPAI in an appeal under § 134 of this title may . . . have remedy by civil action against the

Commissioner in the" district court.  Id. § 145 (1997).

6

Concomitantly with its amendments to § 134, however, Congress also since significantly reworked both of these statutory sections in order to account for the prospect of reexamination. Indeed, the amendments to both § 141 and § 145 expressly tracked the changes to § 134 by premising the availability of one or the other type of judicial review upon the particular status (*e.g.*, patent applicant, patent owner) of the entity before the BPAI – creating a seamless and comprehensive system.  With this said, after 1999, §§ 141 and 145 provided as follows, in pertinent part:

> [§ 141] – An *applicant* dissatisfied with the decision in an appeal to the [BPAI] under § 134 of this title may appeal the decision to the United States Court of Appeals for the Federal Circuit. . . . A *patent owner* in *any reexamination proceeding* dissatisfied with the final decision in an appeal to the [BPAI] under § 134 may appeal the decision *only* to the United States Court of Appeals for the Federal Circuit.

> [§ 145] – An *applicant* dissatisfied with the decision of the [BPAI] in an appeal under *§ 134(a)* of this title may . . . have remedy by civil action against the Commissioner in the United States District Court for the District of Columbia . . . .

35 U.S.C. §§ 141; 145 (2000) (emphasis added).[3]  As stated earlier, § 134(a) provides for appeals to the BPAI by a patent *applicant*.  See id. § 134(a).  Importantly in this regard, it will be recalled that SSBG – as a patent owner in a reexamination proceeding – appealed to the BPAI pursuant to § 134(b), *not* § 134(a).

## II.    THE "CHALLENGED REGULATION"

The USPTO regulation that plaintiff challenges in the instant action – 37 C.F.R. § 1.303 – simply serves as a reiteration of these statutory provisions.  Contained within the section of the

---

[3]To the extent pertinent to plaintiff's instant action (*i.e.*, the judicial review opportunities available to a patent owner engaged in an *ex parte* reexamination proceeding), these provisions read identically today.  Of tangential interest, however, Congress amended § 141 in 2002 to allow third-parties engaged in *inter partes* reexamination an opportunity to seek judicial review from an adverse BPAI decision, but only in the Federal Circuit.  See 35 U.S.C. § 141 (2009).

USPTO's regulations entitled "Rules of Practice in Patent Cases," the provision informs entities, *inter alia*, of the particularities of one the statutory provisions regarding judicial review (§ 145), and sits amidst the agency's articulation of various procedural details regarding judicial review (*e.g.*, time within which one must seek review; transmission of the administrative record, etc.).

At the outset, however, a version of what is now located at 37 C.F.R. § 1.303 has been present for over *sixty years* – even before the most recent incarnation of the Patent Act (which Congress promulgated in 1952). More specifically, in 1948, the USPTO promulgated a precursor to § 1.303 (then codified at 37 C.F.R. § 1.305) that informed entities of the existence of an "option of proceeding under [Revised Statutes] 4915." Rules & Regulations, 13 Fed. Reg. 9575, 9595 (Dec. 31, 1948). That statutory provision – also then-codified at 35 U.S.C. § 63 – served as a precursor to the modern-day § 145, providing a right to seek a "bill of equity" in district court from the refusal of a patent application. See Hyatt, 576 F.3d at 1257.

The regulation moved to its present location (§ 1.303), and obtained almost its present language, subsequent to Congress' passage of the Patent Act in 1952. See 17 Fed. Reg. 10864, 10868 (Jan. 13, 1981). During the ensuing years, the USPTO amended the regulation to, *inter alia*, account for the creation of the Federal Circuit, and the creation of the BPAI (from the separate Board of Patent Appeals and Board of Interferences). See Patent Interference Proceedings, 49 Fed. Reg. 48416, 48455 (Dec. 12, 1984); Revision of Patent Procedure, 47 Fed. Reg. 47744, 47756 (Oct. 27, 1982).

As stated earlier, Congress, in 1999, completed the present system of administrative and judicial review – but in the process, completely overhauled the statutory provisions relating to both BPAI appeals and Article III review. In order to conform its regulations with the significant

changes Congress made on this score, the USPTO amended 1.303 in the wake of the 1999

statutory amendments.  See Rules to Implement Optional Inter Partes Reexamination

Proceedings, 65 Fed. Reg. 76756, 76761 (Dec. 7, 2000) ("Rules").  After those amendments, §

1.303 read as follows, in pertinent part:

> (a) Any applicant, or any owner of a patent involved in an *ex parte* reexamination
> proceedings filed before November 29, 1999, dissatisfied with the decision of the Board
> of Patent Appeals and Interferences . . . may, instead of appealing to the U.S. Court of
> Federal Circuit (§ 1.301), have remedy by civil action under 35 U.S.C. 145 or 146, as
> appropriate.
>
> . . . .
>
> (d) For an *ex parte* reexamination proceeding filed on or after November 29, 1999 . . . no
> remedy by civil action under 35 U.S.C. 145 is available.

37 C.F.R. § 1.303 (2000).  The dates found within the regulatory language refer to the effective

date of the legislative act through which Congress promulgated the 1999 amendments both to §

134 and the various judicial review provisions – and thus the date on which those amendments

went into effect.  See Rules, 65 Fed. Reg. at 76761.

It is also important to note the regulatory context in which § 1.303 is found.  At the

outset, § 1.303 is within the section of the USPTO's regulations entitled "Rules of Practice in

Patent Cases."  More specifically, however, § 1.303 is located amongst several other regulatory

provisions that articulate the procedural requirements applicable to an entity seeking to obtain

judicial review.  The statutory provisions themselves provide the USPTO with the authority to

promulgate rules regarding these details.  See, e.g., 35 U.S.C. § 145 (providing that one seeking

review in district court must do so "within such time after such decision, not less than sixty days,

*as the Director appoints*" (emphasis added)).  And to this end, directly after § 1.303, the

9

USPTO's regulations provide the time limits on seeking judicial review – cross-referencing the

regulatory provisions that describe the particular judicial review mechanism at issue.  See 37

C.F.R. § 1.304(a)(1) ("The time for filing the notice of appeal to the U.S. Court of Appeals for

the Federal Circuit (§ 1.302) or for commencing a civil action (§ 1.303) is two months from the

date of the decision of the [BPAI].").  As such, the regulations that plaintiff challenges here are

nothing more than informational in nature – completing the regulatory mosaic – so that the

provisions articulating the necessary procedural requirements do not appear without any

reference point.

## UNDISPUTED MATERIAL FACTS

To be sure, this civil action raises issues that are primarily of a legal vintage; as such, the

arguments presented in the parties' cross-motions for summary judgment do not rely upon

extensive factual discussion.  Accordingly, one might question whether a factual statement, as is

traditionally provided in a summary judgment context, is even necessary here.  But because the

Local Rules of this Court mandate such a statement, see Loc. Civ. R. 56(B), and a few particular

facts are relevant to the disposition of the instant motion, the USPTO provides such a statement

here.[4]

1.     On October 11, 2005, the USPTO issued U.S. Patent No. 6,954,453 B1 (the '453

patent).  SSBG is the current owner of the '453 patent.

---

[4]Of course, this memorandum serves *two* functions – in support of USPTO's own motion
for summary judgment motion and in opposition to plaintiff's motion.  Local Rule 56 also
requires any summary judgment *opponent* to indicate those facts listed in a motion for summary
judgment that it disputes.  On this score, the USPTO does not dispute those facts (as compared to
legal statements or conclusions) plaintiff lists under the section of its memorandum specifically
entitled "Statement of Undisputed Facts."  Mem. (Dkt. No. 10), at 1-3 ¶¶1-10.

2.      Approximately two years later, on August 30, 2007, a third-party (Cisco Systems, Inc.) requested that the USPTO subject the '453 patent to *ex parte* reexamination.  Concluding that Cisco had presented a "substantial new question of patentability" as required by the Patent Act, 35 U.S.C. § 304, the USPTO agreed to reexamine the '453 patent.  The USPTO assigned the reexamination proceeding Control No. 90/010,017.  Defendants' Exhibit ("DEX") A; B

3.      On August 6, 2008, as a part of the reexamination proceedings, a USPTO patent examiner issued a final rejection of claims 34-36, and 38 of the '453 patent.  DEX C.

4.      On October 6, 2008, pursuant to 35 U.S.C. § 134(b), SSBG's predecessor appealed the examiner's rejection to the BPAI.  Only recently, however, on September 28, 2009, did the BPAI docket the appeal upon the conclusion of briefing.  DEX D.

## ARGUMENT

### I.    PLAINTIFF'S CLAIMS ARE NOT JUSTICIABLE

As this Court will recall, SSBG remains presently engaged in administrative appellate proceedings before the BPAI in their attempt to secure reversal of the examiner's rejection of certain claims in the '457 patent.  SSBG thus concedes – albeit implicitly, Mem., at 2 ¶7 – that it may never be faced with the judicial review choice that serves as the gravamen of this action; *i.e.*, SSBG will not need judicial review of *any* form if the BPAI agrees with the arguments SSBG has presented on appeal.  In short, the challenged regulation – whatever its import – does not apply to SSBG now and may *never* apply to SSBG at all.  Because SSBG's putative injury at the hands of the challenged regulations therefore "is merely speculative and may never occur," Dougherty v. Town of N. Hempstead, 282 F.3d 83, 90 (2d Cir. 2008), its instant claim serves as an attempt to

11

obtain a classic "advisory opinion" from this Court.  This Article III of the Constitution prohibits.

A.  **GENERAL PRINCIPLES**

It is by now axiomatic that, pursuant to Article III of the United States Constitution, this Court's jurisdiction extends only to "cases or controversies."  U.S. CONST. art. III; see also Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990).  The "case or controversy" requirement has given rise to several so-called "justiciability" doctrines that implicate this Court's ability to entertain (*i.e.,* exercise jurisdiction over) a given claim.  See NTEU v. United States, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

Two of these several doctrines – the inter-related tenets of standing and ripeness – are implicated here.  The standing doctrine constitutionally ensures, as the Supreme Court has noted, that "the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975); see also Animal Legal Defense Fund v. Quigg, 932 F.2d 920, 925 (Fed. Cir. 1991).  In order to demonstrate standing to bring a given claim, a plaintiff must establish the following:

> (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) *actual or imminent, not conjectural or hypothetical*; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000) (emphasis added) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  SSBG's main difficulty in this respect is with the highlighted language above – the need to demonstrate an "imminent," as opposed to "hypothetical," injury.  SSBG's injury – the loss of judicial review under § 145 putatively caused by the USPTO's regulations – is entirely hypothetical, as SSBG

will never face this injury if the BPAI sustains its appeal and reverses the examiner's final rejection. Moreover, given the USPTO's acknowledgment that the challenged regulation is merely informative in nature, and does not carry the force of law, see supra Part II.B., plaintiff cannot assert *any* injury from the regulation.

Related to the standing doctrine in many respects (especially under the instant circumstances) is the ripeness doctrine, which attempts to "separate[] those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." United Trans. Union v. Foster, 205 F.3d 851, 857 (5th Cir. 2000). Any ripeness analysis undertakes resolution of two separate inquiries: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967). And as this Court has correctly noted, in order for SSBG's claims "to be ripe for review, [they] must satisfy *both* the fitness and the hardship requirements." Olajide v. BICE, 402 F. Supp. 2d 688, 692 n.5 (E.D. Va. 2005) (Ellis, J.) (emphasis added).

As the Federal Circuit has noted, the ripeness question "can also be viewed" through the prism of standing; *i.e.*, "[a]bsent an injury-in-fact . . . there can be no immediate and real controversy." Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1338 & n.6 (Fed. Cir. 2008). At bottom, however, "[t]he underlying inquiry, rooted in the requirement that Article III courts cannot issue advisory opinions, is the same regardless of whether labeled standing, ripeness, or the requirement that the controversy have 'sufficient immediacy and reality.'" Id. at 1338 n.6; see also Ross v. Bank of Am., 524 F.3d 217, 226 (2d Cir. 2008). Although the USPTO seeks summary judgment on *both* standing and ripeness principles, it will primarily focus upon

13

ripeness because "the procedural posture of this case raises 'the central concern [of the ripeness] doctrine [of] whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (quoting 13A Charles Alan Wright, et al., FED. PRACTICE & PROCEDURE § 3532 (1984)).

**B.     WITHHOLDING JUDICIAL REVIEW AT THIS TIME WOULD NOT CAUSE "IMMEDIATE AND SUBSTANTIAL IMPACT" TO SSBG**

The instant memorandum will focus exclusively upon the second prong of the ripeness analysis – whether SSBG can demonstrate that withholding judicial consideration of its challenge to the pertinent USPTO regulations at this time will cause it sufficient hardship.[5]  It is important to recognize on this score that not *any* hardship will suffice; indeed, as the Federal Circuit has held, a case is not ripe for review under Article III unless the "complained-of conduct has an 'immediate and substantial impact' on the plaintiff."  Caraco Pharm. Labs., Inc. v. Forest Labs., Inc., 527 F.3d 1278, 1295 (Fed. Cir. 2008) (quoting Gardner v. Toilet Goods Ass'n, 387 U.S. 167, 171 (1967)), cert. denied, 129 S. Ct. 1316 (2009).

A review of the seminal Supreme Court decision on this subject demonstrates this reality. In Abbott Laboratories v. Gardner, 387 U.S. 136 (1967), the Supreme Court held that a particular regulatory challenge was ripe for review because the failure to allow judicial review would require plaintiff to comply immediately with the challenged regulation and the failure to so

---

[5]There can be little doubt that SSBG can surpass the first ripeness hurdle – whether the issues are fit for judicial consideration at the present time.  See Abbott Labs., 387 U.S. at 149. SSBG's challenge to the pertinent USPTO regulations is primarily legal in nature, and does not require much factual development for resolution.  See id.; see also Coalition for Common Sense v. Secretary, 464 F.3d 1306, 1316 (Fed. Cir. 2006) (holding action raised "legal issues of statutory construction" met the first prong of the ripeness test).

comply would expose plaintiff to *criminal* sanctions:

> These regulations . . . . ha[ve] a direct effect on the *day-to-day* business of all prescription drug companies; its promulgation puts plaintiffs in a dilemma . . . The alternative to compliance – continued use of material which they believe in good faith meets the statutory requirements, but which clearly does not meet the regulation of the Commissioner - -may be even more costly.  That course would risk serious *criminal and civil penalties* . . .

Id. at 152-53.  But on the same day, the Supreme Court distinguished the regulatory challenge in

Abbott Laboratories from another regulatory challenge – with different ripeness results.  More

specifically, in Gardner v. Toilet Goods Association, 387 U.S. 167 (1967), the Supreme Court

held a regulatory challenge unripe because "the impact" of the particular regulations would not

"be felt immediately by those subject to it in conducting their day-to-day affairs," and the failure

to comply would not result in criminal sanction.  Toilet Goods, 387 U.S. at 164-65.  A regulatory

challenge is therefore ripe only where the "regulation requires an immediate and significant

change in the plaintiffs' conduct of their affairs with serious penalties attached to

noncompliance."  Abbott Labs., 387 U.S. at 152.

SSBG cannot even come close to surpassing this hurdle under the instant circumstances.

At no point in either its complaint or its summary judgment papers does SSBG even articulate (at

least in any cognizable fashion) that the existence of the pertinent USPTO regulations regarding

judicial review of BPAI decisions have any immediate impact on its day-to-day business affairs,

let alone the type of substantial impact (in the form of potential criminal liability) that the

Supreme Court has suggested necessary.  Much to the contrary, plaintiff's complaint is replete

simply with conclusory statements – that the regulations "tend[] to diminish the value of the []

'453 Patent," and "tend[] to impair SSBG's ability to enforce or license the [] '453 Patent."

Complaint, ¶¶27-28.  Dr. Schindler's declaration is of a similar conclusory ilk, providing only

that the regulations "tend[] to diminish the value of the [] '453 Patent and *threaten* SSBG with

irreparable harm to its business and property."  Schindler Dec., ¶8 (emphasis added).

Initially, it is well-established that such "conclusory statements, standing alone, are

insufficient to carry [plaintiff's] burden's to prove hardship under the second prong of the Abbott

Labs. test."  Cedars-Sinai, 11 F.3d at 1585.  But far more importantly, as the Supreme Court held

in Toilet Goods, the *type* of harm to which SSBG alludes has nothing to do with the day-to-day

business affairs of the company, and thus "this is not a situation in which primary conduct is

affected."  Toilet Goods, 387 U.S. at 164.  Nor can SSBG articulate the necessary *degree* of

present impact – that its present failure to adhere to the judicial review regulations exposes it to

criminal liability, or anything approaching the same.[6]  Put simply, SSBG merely alleges that the

regulations create a concern that *if* the BPAI acts adversely to its interests, it might then be forced

into a judicial review quandary – a "business uncertainty" that the Federal Circuit has rejected as

creating sufficient hardship.  See U.S. Ass'n of Importers of Tex. & App. v. DOL, 413 F.3d

1344, 1349-50 (Fed. Cir. 2005).

SSBG nevertheless suggests that the instant civil action is ripe for judicial review because

if it were required to await the BPAI's decision and assert its regulatory challenge at that time, it

would be forced into what it believes is an untoward choice over the particular court in which to

seek judicial review.  According to SSBG, if it were to seek review in district court pursuant to §

---

[6]Unlike the regulations at issue in the aforementioned Supreme Court decision, an entity such as SSBG need not "comply" with the USPTO regulations explaining the statutory provisions governing the availability of judicial review, making the ripeness analysis somewhat simple.

145, and its challenge to the regulations rejected, it may lose its opportunity to obtain judicial

review in the Federal Circuit – and vice-versa. Mem., at 5 ¶18. At the outset, for the reasons

articulated above, because SSBG's position fails to articulate any *present* harm to its *day-to-day*

*affairs*, it is insufficient at the threshold. But the Supreme Court has essentially rejected SSBG's

position in a far more solemn context (*i.e.*, capital habeas), holding that the "risks associated with

choices commonly faced by litigants" do not demonstrate the necessary hardship. Calderon v.

Ashmus, 523 U.S. 740, 748 (1998).

 Even if one were to ignore these threshold difficulties, SSBG's asserted "Hobson's

choice" is far more conjectural than real. In this respect, SSBG ignores the fact that federal

statute mandates the transfer of a civil action or appeal in order to cure jurisdictional defects:

> Whenever a civil action is filed in a court . . . or an appeal, including a petition for review
> of administrative action, is noticed for or filed with such a court and that court finds that
> there is a want of jurisdiction, the court *shall*, if it is in the interests of justice, transfer
> such action or appeal to any other such court in which the action or appeal could have
> been brought at the time it was filed or noticed, and the action or appeal shall proceed *as
> if it had been filed in or noticed for the court to which it is transferred on the date upon
> which it was actually filed in or noticed for the court from which it was transferred.*

28 U.S.C. § 1631 (emphasis added). As such, assuming hypothetically that the BPAI acts

adversely to SSBG, and SSBG believes that it has a good faith argument that it – as a patent

owner engaged in *ex parte* reexamination proceedings – is entitled to District Court judicial

review pursuant to § 145, it can assert those arguments in the District Court after the BPAI so

rules. And if SSBG is wrong (*i.e.*, the District Court concludes it lacks jurisdiction), it need not

be concerned that it has lost all avenues for judicial review by making such a choice because it

can ask the District Court (pursuant to § 1631 above) to transfer the action to the Federal Circuit

for judicial review under § 141. In this respect, one must recall that pursuant to § 1631, a district

court "shall" transfer if it is in the interests of justice.  See Ctr. for Nuclear Resp. v. NRC, 781

F.2d 935, 944 (D.C. Cir. 1986); see also In re Schiano, 327 Fed. Appx. 202, 202 (Fed. Cir. 2002)

(transferring petition for review of USPTO petition decision from Federal Circuit to this Court,

where jurisdiction lies under the APA).  SSBG is therefore not in an "untenable remedial

dilemma."  Calderon, 523 U.S. at 750 (Breyer, J., concurring).[7]

*          *          *

In the end, any purported injury to SSBG as a result of the pertinent USPTO regulations

is entirely speculative and hypothetical – a positive result for SSBG in the pending BPAI

proceedings would eliminate any need to confront the judicial review quandary it brings to this

Court.  Nor can SSBG articulate *any* present impact on its day-to-day affairs from the regulatory

provisions at issue.  To the contrary, SSBG presents its claim in an "attempt[] to gain a litigation

advantage by obtaining an advance ruling" on the jurisdictional issue underlying the various

statutory provisions governing judicial rulings of BPAI decisions – an endeavor the Supreme

Court has held does not survive ripeness analysis.  Id. at 747.  Because SSBG's claims are not

ripe, this Court lacks jurisdiction over the same, and judgment should be entered in favor of the

USPTO.

II.    THE CHALLENGED REGULATION IS NOT "CONTRARY TO LAW"

A.    SECTION 1.303 IS AN ACCURATE EXPLANATION OF THE AVAILABILITY
OF JUDICIAL REVIEW FOR PATENT OWNERS SEEKING REVIEW OF AN *EX
PARTE* REEXAMINATION DECISION

Even if this Court were to conclude that this action constitutes an Article III "case or

---

[7]Additionally, SSBG could requests that the Solicitor of Patents provide it with additional
time within which to file an appeal with the Federal Circuit.  See 37 C.F.R. § 1.304(a)(3)(i).

controversy," SSBG's claims fail on the merits.  The heart of SSBG's instant action is that §

1.303 (*i.e.*, its explanation that District Court review under § 145 is unavailable to patent owners

seeking review of BPAI decisions rendered in the context of *ex parte* reexamination) runs afoul

of the provisions of the Patent Act governing judicial review.  On this score, SSBG premises its

argument almost exclusively on the language contained in 35 U.S.C. § 306, which Congress

neglected to amend in conjunction with its significant modifications to the judicial review

provisions of the Patent Act. Nevertheless, the adoption of plaintiff's position would run afoul of

several significant canons of statutory construction, and would require this Court to nullify

statutory language Congress passed as part of its overhaul of the judicial review scheme.  At

bottom, § 1.303 is fully consistent with the Patent Act.

The instant inquiry is most certainly an exercise in statutory construction – whether §

1.303 accurately explains that the Patent Act precludes district court judicial review under § 145

of BPAI decisions that are adverse to a patent holder in an *ex parte* reexamination.  And as such,

two axiomatic principles about that exercise – both of which are integral to the instant

circumstances – bear mentioning.  At the threshold, it is well-established that this "analysis must

begin with the plain language" of the statute, for "'when a statute speaks with clarity to an issue,

judicial inquiry into the statute's meaning in all but the most extraordinary circumstance, is

finished.'"  In re Microstrategy, Inc. Secs. Litig., 115 F. Supp. 2d 620, 659 (E.D. Va. 2000)

(Ellis, J.) (quoting Metro. Stevedore Co. v. Rambo, 515 U.S. 291, 294 (1995)).  And in this

respect, "a cardinal principle of statutory construction is that we must give effect, if possible, to

every clause and word of a statute," Williams v. Taylor, 529 U.S. 362, 404 (2000), so as not to

"render any of the statutory text meaningless or as mere surplusage."  Duncan v. Walker, 533

U.S. 167, 174 (2001); <u>see also</u> <u>Sharp v. United States</u>, 580 F.3d 1234 (Fed. Cir. 2009).

> **1.      SSBG's Statutory Construction Would Require this Court to Render Each of the 1999 Amendments to the Patent Act's Judicial Review Provisions "Mere Surplusage"**

SSBG's construction of the Patent Act – to allow for district court review under § 145 at the behest of a patent owner from an adverse BPAI decision in an *ex parte* reexamination *context* – would require this Court to render the 1999 amendments to the Patent Act's judicial review provisions entirely meaningless.  More specifically, such a construction would eliminate Congress' amendments to both § 141 *and* § 145.  Because this would therefore violate the well-established canons of statutory construction, this Court should reject SSBG's position.

> **a.      § 141 Expressly Limits Judicial Review in "Any" Reexamination Context to the Federal Circuit**

As stated above, in 1999 Congress added the following sentence to § 141:

> A *patent owner* in *any reexamination proceeding* dissatisfied with the final decision in an appeal to the [BPAI] under § 134 may appeal the decision *only* to the United States Court of Appeals for the Federal Circuit.

35 U.S.C. § 141 (emphasis added).  The current version of § 141 is identical for these purposes, and only added a clause governing judicial review at the behest of third-parties in a "*inter partes*" context.  Notably, Congress did not attempt to limit the scope of the sentence regarding patent *owners* to a *particular type* of reexamination by modifying the phrase "reexamination proceeding" with either "*ex parte*" or "*inter partes*"; to the contrary, it utilized the broad term "any."  And in this respect, it is well-established that "[t]he word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive."  <u>Barseback Kraft AB v. United States</u>, 121 F.3d 1475, 1481 (Fed. Cir. 1997).  Congress therefore, in adding this sentence to §

141, clearly sought to limit judicial review at the behest of patent owners in *all* or *every* type of

reexamination proceedings "only" to Federal Circuit appeals.[8]  Reading the Patent Act to

preserve judicial review in this context to anything *other* than Federal Circuit appeals would

therefore require deletion of the second sentence of § 141 – an action obviously not authorized by

the construction canons.

SSBG recognizes this difficulty, and attempts to avoid it by making much of the

distinction between the terms "appeal" and "civil action"; *i.e.*, that in using the term "appeal,"

Congress could not possibly have meant to limit the availability of District Court review under §

145, which is not an "appeal," but the filing of a "civil action."  Mem., at 15.  SSBG makes too

much of this linguistic difference.  Initially, the section on which SSBG rests virtually its entire

argument on this score – § 306, which refers to both § 141 *and* § 145 – is entitled "Appeal."  See

35 U.S.C. § 306.  And whether or not consistent with generic notions of civil procedure, in

promulgating the 1999 amendments, Congress clearly viewed both Federal Circuit and District

Court review as "appeals" from BPAI decisions:

> The patentee [*i.e.*, patent owner] is not entitled to the alternative of an *appeal* to the
> United States District Court for the District of Columbia.  Such *appeals* are rarely taken
> from *ex parte* reexamination under existing law, and *its removal* should speed up the
> process.

H.R. CONF. RPT. 106-464, at 135 (Nov. 9, 1999) (emphasis added).  Finally, the distinction

SSBG foists upon this Court would render the term "only" superfluous, especially given the lack

_____

[8]Lest their be any doubt about this conclusion, the very next clause of modern-day § 141 (added in 2002) expressly refers to "*inter partes*" reexamination in describing the judicial review available to third-party participants in such proceedings.  See 35 U.S.C. § 141.  And even in 1999, Congress demonstrated that when it wanted to delineate between *ex parte* and *inter partes* reexamination, it knew how to do so – expressly providing this distinction in delineating those instances in which administrative appeal to the BPAI was available.  See id. § 134.

of such a term in the other scenarios (*e.g.*, patent applicant on initial examination) identified in §

141.  Put simply, in order to give "only" any meaning, it must extend to eliminate the availability

of the other type of judicial review generally provided by the Patent Act – district court review

under § 145.

>    **b.**    **§ 145 Expressly Restricts District Court Judicial Review to**
>             **Those Instances in Which the BPAI Rendered Its Decision**
>             **Pursuant to § 134(a)**

SSBG's memorandum surprisingly pays mere lip service to the actual text of the statutory

section governing the very type of judicial review it is so interested in obtaining – 35 U.S.C. §

145.  As stated earlier, in 1999, Congress amended § 145 to read as follows, in pertinent part:

>    An *applicant* dissatisfied with the decision of the [BPAI] in an appeal under *§ 134(a)* of
>    this title may . . . have remedy by civil action against the Commissioner in the United
>    States District Court for the District of Columbia . . . .

35 U.S.C. § 145 (emphasis added).  Section 134(a), in turn, authorizes patent *applicants* who

receive an adverse agency determination during initial examination to appeal to the BPAI.  See

<u>id.</u> § 134(a).  Accordingly, § 145 – by its express terms – limits district court review only to those

patent "applicants" who appeal to the BPAI pursuant to § 134(a), and excludes all other

circumstances.  See <u>Reyes-Gaona v. North Carolina Growers Ass'n</u>, 250 F.3d 861, 865 (4th Cir.

2001) ("[T]he doctrine of *expressio unis est exclusio alterius* instructs that where a law expressly

describes a particular situation to which it shall apply, what was omitted or excluded was

intended to be omitted or excluded.").

But SSBG is a patent *owner*, not a patent *applicant*; as such, it appealed to the BPAI

pursuant to *§ 134(b)*, which authorizes a "patent owner in any reexamination proceedings" to

appeal an adverse agency ruling to the BPAI.  35 U.S.C. § 134(b).  More importantly for instant

purposes, however, the explanatory terms of § 1.303 do not identify that § 145 District Court review is unavailable to a patent applicant who has taken appeal to the BPAI under § 134(a). To the contrary, consistent with the express language of § 145, § 1.303 explains that such judicial review is unavailable to patent *owners* in *ex parte* reexamination proceedings.

Only by deleting the phrase "[a]n applicant dissatisfied with the decision of the [BPAI] in an appeal under § 134(a) of this title" from § 145 can SSBG maintain that it would (in the event of an adverse BPAI decision) be entitled to District Court review pursuant to § 145, or that the contrary terms of § 1.303 are inconsistent with the express language of the Patent Act. Because the canons of statutory construction foreclose this position, SSBG's argument lacks merit.

## 2.    The Continued Existence of § 306 Does Not Mandate an Alternative Result

Against this clear statutory backdrop, SSBG continues to maintain that even after 1999, as a patent owner in an *ex parte* reexamination, it would be entitled to District Court judicial review under § 145. It premises this position exclusively upon 35 U.S.C. § 306, which is located in the chapter of the Patent Act related to *ex parte* reexamination, and was promulgated by Congress in 1980. The provision provides as follows:

> The patent owner involved in a reexamination proceeding under this chapter may appeal under the provisions of section 134 of this title, and may seek court review under the provisions of section 141 to 145 of this title, with respect to any decision adverse to the patentability of any original or proposed amended or new claim of the patent.

35 U.S.C. § 306. At the outset, § 306 is not facially inconsistent with the explanatory terms of § 1.303, and thus can – and should – be read *in pari materia* with the aforementioned judicial review provisions of the Patent Act. But even if § 1.303 stands "in conflict with the clear and unambiguous terms of [] § 306," Mem., at 12, it is § 306 that must fall to the side, because §

1.303 is premised upon the later-in-time (1999) amendments to the Patent Act.

>    **a.    The Terms of § 306 Are Not Facially Inconsistent with the
>         Newly-Amended Terms of §§ 141 and 145**

As a corollary to the "mere surplusage" canon identified earlier, it is well-established that when engaging in statutory construction, "[a] court must [] interpret the statute as a symmetrical whole, and fit, *if possible*, all parts into a harmonious whole." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (emphasis added). As such – again "if possible" – this Court must attempt to "harmonize" the 1999 amendments to §§ 141 and 145, on the one hand, and the continued existence of § 306, on the other.

And it is possible to so harmonize these provisions. Although SSBG makes much of the reference in § 306 to court review under "sections 141 to 145 of this title," nothing in the provision mandates that the provision reference the state of §§ 141 and 145 at the *fixed* time – 1980 – when Congress promulgated § 306. Put perhaps more simply, all that § 306 provides is that patent owners in *ex parte* reexamination proceedings are entitled to whatever judicial review is available "under" the referenced provisions. That is the explanation provided by § 1.303 – that after 1999, District Court judicial review at the behest of patent owners in *ex parte* reexamination is simply no longer provided "under sections 141 to 145."

Given the clear language employed in §§ 141 and 145 on this very points, § 306 thus serves as a statutory provision that contains a cross-reference, which, as the Seventh Circuit cogently recognized, is a drafting technique often employed by Congress for obvious reasons:

> Writing a cross-reference rather than repeating the text to be incorporated is useful precisely because the target may be amended. A pointer permits the effect of a change in one section to propagate to other, related, sections without rewriting all of those related sections.

Hermann v. Cencom Cable Assocs., 978 F.2d 978, 983 (7th Cir. 1992).  And so it is here.  By noting that patent owners in *ex parte* reexamination may seek judicial review "under the provisions of sections 141 to 145," Congress inserted a cross-reference into § 306, thus allowing the scope of judicial review in that context to alter pursuant to any changes that it might later make (and did make in 1999) to those section.

Because § 306 is therefore not inconsistent with § 1.303 – and the clear statutory language of §§ 141 and 145 that animated the same – SSBG's argument is without merit.

### b.    Any Conflict Between §§ 141/145, and § 306, Must Be Resolved in Favor of §§ 141/145

As stated above, the clear present text of §§ 141 and 145 – and the text in existence at the time the USPTO promulgated § 1.303 – mandates the conclusion that Congress has foreclosed District Court judicial review at the behest of patent owners in *ex parte* reexamination proceedings.  Because Congress promulgated the statutory amendments to §§ 141 and 145 that provide this interpretative result in 1999 – well after its promulgation of 1980 – in the event of any "conflict" between the provisions, it is § 306 that must yield.  In such circumstances, put more simply, Congress is considered to have impliedly repealed § 306 by implication.

Despite its best intentions, and given the magnitude of the United States Code, Congress from time-to-time promulgates statutory language that contradicts language in already-existing statutes.  But contrary to plaintiff's ostensible position here, it is not the more recent congressional act that must give way.  As courts have held, under these circumstances, the courts consider Congress to have repealed the *earlier* statutory language by implication:

> An irreconcilable conflict between the old and new legislation can demonstrate such clear intent to repeal. "Where provisions in the two acts are in irreconcilable conflict, the later

act to the extent of the conflict constitutes an implied repeal of the earlier one."

Last Best Beef, LLC v. Dudas, 506 F.3d 333, 339 (4th Cir. 2007) (quoting Posades v. Nat'l City

Bank, 296 U.S. 497, 503 (1936)); see also Harding v. Dep't of Veterans Affairs, 448 F.3d 1373,

1376 n.2 (Fed. Cir. 2006) ("To the extent that [two provisions] can be said to conflict, this is an

appropriate circumstance for the application of the ancient canon of construction *lex posterior*

*derogate legi priorii* . . . where two statutory provisions appear to conflict, the later in time

prevails."). As a result, to the extent that this Court concludes that § 306 is in "irreconcilable

conflict" with the 1999 amendments to §§ 141 and 145,[9] the former is considered to have been

repealed by implication. Nor would this do any damage to the *ex parte* reexamination provisions

of the Patent Act, because – as the Supreme Court held in Posades – only those provisions in

*irreconcilable conflict* are considered repealed.

The above authority is motivated – as are all statutory construction analyses – by a desire

to divine the will of Congress. Although SSBG devotes an extensive amount of space in its

memorandum to the discussion of various bills – *all*, importantly, prior to 1999 – that would

have amended § 306, it neglects the specific legislative history available on the very question of

the meaning of the 1999 amendments. And this legislative history[10] gives the lie to SSBG's

ostensible position (one belied, first and foremost, by the statutory language itself) that the 1999

amendments to the Patent Act's judicial review provisions *only* concerned *inter partes*

reexamination:

---

[9]SSBG cannot offer any argument by which one can give § 306 the meaning that its memorandum ascribes to it, while at the same time giving any meaning to the 1999 amendments to §§ 141 and 145.

[10]The USPTO quoted this legislative history earlier, but it bears repeating in this context.

> The patentee [*i.e.*, patent owner] is not entitled to the alternative of an appeal to the United States District Court for the District of Columbia. Such appeals are rarely taken from *ex parte* reexamination under existing law, and *its removal* should speed up the process.

H.R. CONF. RPT. 106-464, at 135 (Nov. 9, 1999) (emphasis added). The key language is "its removal should speed up the process." Id. Before the 1999 Act, there was *no* "*inter partes*" reexamination, and therefore nothing to "*remove*" that would "speed up" a heretofore non-existent "process." Given the words that Congress used, the language quoted above reveals an intent to eliminate District Court judicial review under § 145 for *both* types of reexamination.

**B.     THE USPTO HAS AUTHORITY TO PROMULGATE INFORMATIONAL, NON-BINDING REGULATIONS REGARDING THE AVAILABILITY OF JUDICIAL REVIEW**

SSBG also argues that Congress did not provide the USPTO with rulemaking authority sufficient to promulgate § 1.303. Mem., at 6-8. Put more specifically, SSBG maintains that the judicial review subjects that are the focus of § 1.303 do not "govern the conduct of proceedings in the [USPTO]," 35 U.S.C. § 2(b)(2)(A), and are thus invalid. SSBG's position – premised on a misconception about the nature of the regulations – is in error.

The extent of USPTO regulatory authority has been well discussed in the Federal Circuit jurisprudence. See generally Cooper Techs. Co. v. Dudas, 536 F.3d 1330 (Fed. Cir. 2008); Merck & Co. v. Kessler, 80 F.3d 1543 (Fed. Cir. 1996). Generally speaking, leaving aside certain specific contexts, Congress has only provided the USPTO with general rulemaking authority over those matters that "govern the conduct of proceedings in the [USPTO]." 35 U.S.C. § 2(b)(2)(A). SSBG reasons that because § 1.303 "purport[s] to . . . cut off substantive rights of patent owners" to District Court judicial review, they cannot stand. Mem., at 6.

SSBG is incorrect in the underlying premise of its argument – that § 1.303 "purports to

27

prescribe and cut off" judicial review rights.  At the outset, although such should hardly be surprising, the USPTO clearly recognizes that the scope of an Article III court's jurisdiction is Congress' province.  See, e.g., Ford v. NYLCare Health Plans, 141 F.3d 243, 248 n.6 (5th Cir. 1998).  And as such, § 1.303 does not itself have the force of law so as to "*cut off*" the availability of a particular type of judicial review to a patent owner.

To the contrary, § 1.303 (like its "sibling," § 1.301 – which discusses the availability of judicial review in the Federal Circuit) is simply explanatory in nature, and is promulgated only in order to provide the public with information about the judicial review opportunities that Congress has made available within the context of the regulations governing the very administrative proceedings from which such review would be had.  See Nat'l Org. of Vets. Advocates, Inc. v. Secretary, 260 F.3d 1365, 1375 (Fed. Cir. 2001) (recognizing that an "interpretative rule" only "represents the agency's reading of statutes and rules rather than an attempt to make new law or modify existing law").[11]  Put simply, § 1.303 does not in any way *bind* or *influence* federal courts in analyzing the scope of their jurisdiction, and as such, the regulation does not itself have any impact upon the judicial rights of patent owners such as SSBG.[12]  This explanation is fatal to SSBG's argument.

---

[11]As one court has noted, such rules disclose, for the public's benefit, "an agency's intended course of action."  Gordon v. Shalala, 55 F.3d 101, 105 (2d Cir. 1995).  It will be recalled that the defendant in any District Court judicial review proceeding under § 145 is the USPTO Director (in his official capacity); as such, one could view § 1.303 as identifying what litigative position USPTO will take on the jurisdiction of the District Court under § 145.

[12]Indeed, it is likely for this reason that the few federal courts that have even cited § 1.303 have done so only in *tandem with* the relevant statutory provision, and not alone.  See, e.g., Lee Pharms. v. Kreps, 577 F.2d 610, 612 (9th Cir. 1978); Klein v. Commissioner, 474 F.2d 821, 824 (4th Cir. 1973).  This demonstrates the judiciary's recognition that the regulation has no independent relevance to the scope of judicial review available pursuant to 35 U.S.C. §§ 141-45.

It should be noted in this context that similar regulations regarding the scope and availability of judicial review are common; in fact, a simple search returned 4540 instances of the phrase "judicial review" in the Code of Federal Regulations database.  For instance, the Merit Systems Protection Board's regulations advise federal employees who have been "adversely affected by a [particular] final Board decision . . . [that they] may obtain judicial review in the United States Court of Appeals for the Federal Circuit."  5 C.F.R. § 1201.133.  *Other* MSPB regulations are very similar to § 1.303 in that they advise interested individuals about which adverse Board orders are reviewed in the Federal Circuit, and which are taken to federal district court.  See, e.g., 5 C.F.R. § 120.127.  Other agencies have even advised the public of the standard of review that would attend any judicial review of its administrative decisions.  See 7 C.F.R. § 400.98(f) (Federal Crop Insurance Corporation).  And finally, in true informative fashion, the Small Business Administration has placed its regulations regarding the availability of judicial review into a question and answer format.  See 13 C.F.R. § 142.37.

The USPTO believes that a regulatory structure that provides rules governing the various administrative proceedings should also inform administrative litigants of the availability of judicial review at the termination of those proceedings.  In this respect, much like *Congress'* development of the intricate scheme governing the review of patentability issues, the USPTO's regulations similarly provide a full mosaic of this review structure, so that patent applicants or owners reviewing the specifics of administrative proceedings have a complete understanding of the process – from beginning to end.

And such is of greater significance in this context, because aside from the general rulemaking authority in § 2(b)(2)(A), Congress *has* provided the USPTO with specific authority

29

to promulgate binding rules that impact on the availability of judicial review. As an example, §

145 provides that judicial review must be sought in the District Court "within such time after [the

BPAI] decision, not less than sixty days, *as the Director appoints*." 35 U.S.C. § 145 (emphasis

added); <u>see id.</u> § 141 (providing similarly with respect to judicial review in the Federal Circuit).

And the USPTO has dutifully heeded Congress' call, promulgating rules regarding the time

limits on seeking judicial review in the regulatory provision directly following § 1.303. <u>See</u> 37

C.F.R. § 1.304. If this provision regarding time limits were to appear within the regulatory

structure without any explanation of the types of judicial review to which it refers, administrative

litigants reading the regulations would be rather confused indeed. The inclusion of regulatory

language regarding judicial review therefore assists in providing the public with information

necessary to an understanding of the other procedural rules that *are* of a binding nature.

*        *        *

Section 1.303 is merely as an informational convenience to those participating in

administrative proceedings before the agency. Because § 1.303 does not have the force of law,

and therefore has no role in the determination of the scope of an Article III court's jurisdiction

under the statutory provisions governing judicial review, SSBG's claim that USPTO

promulgated the regulation without authority must fail.

## CONCLUSION

For the foregoing reasons, this Court should enter summary judgment in favor of the

USPTO, and deny SSBG's motion for the same relief.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By:    _____/s/_____
DENNIS C. BARGHAAN, JR.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax:       (703) 299-3983
Email:  dennis.barghaan@usdoj.gov

DATE: October 21, 2009              ATTORNEYS FOR DEFENDANTS

OF COUNSEL:      Benjamin Wood
                 Nathan Kelley
                 Associate Solicitors
                 United States Patent & Trademark Office

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing ("NEF") to the following:

Tommy P. Beaudreau
1001 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C.  20004-2505
Tommy.Beaudreau@friedfrank.com

<u>Date</u>: October 21, 2009                        _____/s/_____
                                                             DENNIS C. BARGHAAN, JR.
                                                             Assistant U.S. Attorney
                                                             2100 Jamieson Avenue
                                                             Alexandria, Virginia 22314
                                                             Telephone: (703) 299-3891
                                                             Fax:          (703) 299-3983
                                                             Email:  dennis.barghaan@usdoj.gov

                                                             ATTORNEYS FOR DEFENDANTS

32
